UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

SUSAN BRISBOIS,

                            Plaintiff,

-against-                                      1:15-CV-354 (LEK/ATB)

UNITED STATES OF AMERICA,

                            Defendant.

SUSAN BRISBOIS,

                            Plaintiff,

-against-                                        1:14-CV-1136 (LEK/ATB)

FDI POSTAL PROPERTIES, II, INC.,

                            Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Susan Brisbois commenced this personal injury action by filing a complaint against FDI Postal Properties, II, Inc., in New York State Supreme Court, Ulster County, on August 8, 2014. Dkt. No. 1, Ex. A ("Complaint"). FDI removed the case to this Court on September 16, 2014. Dkt. No. 1 ("Notice of Removal"). Presently before the Court are motions by FDI and the United States of America for summary judgment. Dkt. Nos. 42 ("FDI's Motion"), 42-1 ("FDI SMF"), 42-2 ("FDI Memorandum"), 43 ("Government's Motion"), 43-1 ("Government Memorandum"), 43-2 ("Government SMF"). For the reasons that follow, both motions are granted.

## II.     BACKGROUND

### A.  Factual Background

The facts below are drawn primarily from the Government and FDI's statements of material facts. Local Rule 7.1 requires a party opposing a summary judgment motion to submit a response to the movant's statement of material facts, admitting or denying the movant's factual assertions. L.R. 7.1(a)(3). Each denial must include a specific citation to the record. Id. "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. Plaintiff has not submitted any response to Defendants' statements of material facts, but does contest a handful of Defendants' factual assertions in her opposition. Dkt. No. 49 ("Opposition") at 2–9. Courts in this District have "often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement." Conway v. United States Postal Serv., No. 14-CV-180, 2016 WL 1259412, at *5 (N.D.N.Y. Mar. 30, 2016), appeal dismissed No. 16-1342 (2d Cir. June 7, 2016). Therefore, the Court deems all "properly supported facts set forth in the [Defendants'] Statement[s] of Material Facts" as admitted. L.R. 7.1(a)(3); see also Meaney v. CHS Acquisition Corp., 103 F. Supp. 2d 104, 109 (N.D.N.Y. 2000) (Kahn, J.) ("Because the nonmovant . . . has failed to comply with the requirements of L.R. 7.1(a)3, and to controvert with specificity the facts set forth in [the] movant['s] Statement of Material Facts, the Court will deem admitted as uncontroverted all the facts properly set forth in [the movant]'s Statement.").

On February 15, 2014, Plaintiff slipped and fell on the walkway leading to the post office in Tillson, New York. FDI SMF ¶ 5, Gov't SMF ¶¶ 1, 10.¹ Plaintiff claims she fell on ice which "formed from water that dripped from a gutter onto the sidewalk." Gov't SMF ¶ 3. She "guess[es]" she fell in the morning, but does not recall what time of day the incident occurred. Id. ¶ 14. When she visited the emergency room on February 15, Plaintiff reported pain in her back, right shoulder, and coccyx. Id. ¶ 68. Hospital personnel performed x-rays on Plaintiff's right ankle, right knee, and lumbar spine, and concluded that she had no fractures. Id. ¶¶ 70–71. Plaintiff was discharged from the hospital at approximately 1:20 PM on February 15. Id. ¶ 76.

At the time of Plaintiff's accident, a winter storm was in progress. On February 13, 2014, the National Weather Service issued a winter storm warning for the Tillson area, which was in effect until 10:00 AM on February 14. Id. ¶¶ 15–16. A second winter storm warning was issued on the morning of February 14, and remained in effect until 6:00 PM that day. Id. ¶ 17. Approximately twenty inches of snow fell in the Tillson area on February 13 and 14. Id. ¶ 19. A melting and refreezing process occurred between 11:57 PM on February 14 and 1:57 AM on February 15. Id. ¶ 22. As a result, new ice formed in the early morning hours of February 15. Id. Additionally, a separate winter storm caused light to moderate snow fall continuously from approximately 5:05 AM to 6:50 PM that day. Id. ¶¶ 23–24. Approximately 0.7 inches of snow fell in the Tillson area on February 15, id. ¶ 25, and the temperature never rose above freezing,

---

¹ In her Complaint, Plaintiff alleges she fell on February 18, 2014. Compl. ¶ 9. However, she sought medical attention for her fall at the Kingston Hospital emergency room on the morning of February 15. Gov't SMF ¶ 10. At her deposition, Plaintiff conceded that she could not recall the exact date of her accident, id. ¶ 12, and agreed that it most likely occured on February 15, the day she visited the emergency room, Dkt. No. 43-8 ("Brisbois Transcript") at 78:18–79:4.

3

id. ¶ 23. Plaintiff recalled there being snow on the ground that day, but did not "remember like how much." Brisbois Tr. at 43:10–11.

FDI owns the Post Office building, and has leased it to the Postal Service since 1994. FDI SMF ¶¶ 1–3. Pursuant to the lease between FDI and the Postal Service, the Government is responsible for regular maintenance of the facility. Id. ¶ 4. FDI maintained responsibility for "structural repairs" to the Post Office. Dkt. No. 42-7 ("Lease") ¶ 27. The Government engaged an independent contractor to provide snow removal and ice abatement at the Post Office during the 2013–2014 winter. Gov't SMF ¶ 26. The contractor performed snow removal at the Post Office twice on both February 14 and 15, 2014. Id. ¶¶ 28–29. The contractor also salted on February 15 and performed additional snow removal and salting on February 18. Id. ¶¶ 29–30.

Two Post Office employees were present on the day Plaintiff fell, mail clerk Nancy Brontoli, id. ¶ 5, and rural carrier Michele Warg, Dkt. No. 43-16 ("Warg Transcript") at 7:16–19. Neither witnessed Plaintiff's fall, id. at 7:20–21; Dkt. No. 43-6 ("Brontoli Transcript") at 12:2–3, or recalled any other Post Office customer besides Plaintiff slipping on ice, Brontoli Tr. at 27:5; Warg Tr. at 10:21.[2] Aside from Plaintiff's fall, the Postal Service has no record of any complaints regarding icy conditions or other accidents at the Tillson Post Office. Gov't SMF ¶ 38.

Plaintiff claims that she fell on ice that "formed from water that dripped from a gutter onto a sidewalk." Dkt. No. 43-5 ("Claim of Injury") at 2.[3] Specifically, she alleges that the Post Office's "gutter had a big hole in it and [the downspout] was disconnected and you could tell by

---

[2] Brontoli did recall a Post Office customer falling once, but did not remember when it happened or if the customer fell on ice. Brontoli Tr. at 26:19–27:8.

[3] Citations to this document refer to the page numbers generated by the Court's electronic filing system ("ECF").

looking at it" that it leaked water onto the walkway. Brisbois Dep. at 99:9–10. She does not know how long the gutter allegedly leaked water. Id. at 100:3. At her deposition, Brontoli also stated that the downspout, which was supposed to carry water from the gutter into an underground pipe, was broken. Brontoli Tr. at 21:3–10. It was her "opinion" that "water would melt off the roof down the gutter and onto the sidewalk and it would freeze." Id. at 20:9–13. According to Warg, the downspout discharged water "[w]hen it rained." Warg Tr. at 19:12. She does not know if the downspout was broken on the day of Plaintiff's accident. Id. at 19:3. Neither Brontoli nor Warg recalled any Post Office customer ever complaining about icy sidewalks. Id. at 10:21; Brontoli Tr. at 24:1. Michael McNamara, a licenced engineer offered as an expert by the Government, inspected the Post Office gutter and downspout, as well as photographs taken before, at the time of, and after Plaintiff's fall. Gov't SMF ¶¶ 43–44. He concluded that the gutter system was working properly and the downspout had been connected to the underground discharge pipe since at least November 2013, several months before Plaintiff's fall. Id. ¶¶ 51–52.

 **B. Procedural Background**

 Plaintiff initially commenced this action against FDI in New York State court on August 8, 2014, Compl., and FDI removed the case to this Court on September 16, 2014, Notice of Removal. Plaintiff commenced a separate action against the Government in this Court on March 25, 2015. Compl., Brisbois v. United States Postal Serv., No. 15-CV-354 (N.D.N.Y. Mar. 25, 2015) (Kahn, J.), ECF No. 1 ("Second Complaint"). On June 24, 2015, the Court consolidated the two actions. Dkt. No. 10 ("Consolidation Order"); see also Order, Brisbois, No. 15-CV-354 (N.D.N.Y. June 24, 2015), ECF No. 9.

The parties engaged in discovery, and on June 1, 2017, FDI and the Government separately moved for summary judgment. FDI's Mot.; Gov't's Mot. Plaintiff opposes the motions, Opp'n, and Defendants submitted replies, Dkt. Nos. 50 ("FDI Reply"), 54 ("Government Reply").

### III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to identifying genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

### A.   Applicable Substantive Law

Plaintiff's claims against the Government are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, which waives sovereign immunity "in a defined category of cases involving negligence committed by federal employees in the course of their employment" and "makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances.'" Dolan v. U.S. Postal Serv., 546 U.S. 481, 484–85 (2006) (quoting § 2674). "New York's negligence law governs this controversy because, under the FTCA, the liability of the United States for injuries caused by the negligent acts or omissions of its employees is determined 'in accordance with the law of the place where the act or omission occurred.'" Citarella v. United States, 86 F. Supp. 3d 151, 153 (E.D.N.Y. 2015) (quoting Tzul v. United States, No. 12-CV-804, 2014 WL 4773972, at *3 (E.D.N.Y. Aug. 14, 2014), adopted by 2014 WL 4773974 (E.D.N.Y. Sept. 24, 2014)).

"Under New York law, a landowner has a duty to maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the

seriousness of the injury, and the burden of avoiding the risk." Feigles v. Costal Lumber Co., 32 F. Supp. 2d 109, 111 (W.D.N.Y. 1998) (citing Basso v. Miller, 352 N.E.2d 868, 872 (N.Y. 1976)). "A real property owner, or a party in possession or control of real property, will be held liable for injuries sustained in a slip-and-fall accident involving snow and ice on its property only when it created the alleged dangerous condition or had actual or constructive notice of it." Somekh v. Valley Nat. Bank, 57 N.Y.S.3d 487, 489 (App. Div. 2017) (quoting Rudloff v. Woodland Pond Condominium Assn., 971 N.Y.S.2d 170, 173 (App. Div. 2013)); accord Rabinowitz v. Marcovecchio, 989 N.Y.S.2d 305, 305 (App. Div. 2014). Thus, to obtain summary judgment, a defendant "in a slip-and-fall case has the initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it." Cruz v. Rampersad, 972 N.Y.S.2d 302, 303 (App. Div. 2013).

### B. The Government's Motion

The Government argues that it is entitled to summary judgment because there is no evidence that it caused or had notice of the ice patch on which Plaintiff slipped. Gov't Mem. at 11–16.[4] It further claims that Plaintiff's claims must be dismissed because the "storm in progress" doctrine absolves a landowner or party in possession of liability for injuries sustained as a result of slippery conditions that occur during, or soon after, an ongoing storm. Id. at 16–18. Finally, the Government argues that it is immune from Plaintiff's suit because any injuries were the result of an independent contractor's negligence, and the FTCA does not waive sovereign immunity for negligent acts by contractors. Id. at 18–20.

---

[4] Citations to this document refer to the page numbers generated by ECF.

*1. Storm in Progress Doctrine*

Under the storm in progress rule, "a property owner will not be held responsible for accidents occurring as a result of the accumulation of snow and ice on its premises until an adequate period of time has passed following the cessation of the storm to allow the owner an opportunity to ameliorate the hazards caused by the storm." Fisher v. Kasten, 2 N.Y.S.3d 189, 190 (App. Div. 2015) (quoting Rabinowitz, 989 N.Y.S.2d at 305). "On a motion for summary judgment, the question of whether a reasonable time has elapsed may be decided as a matter of law by the court, based upon the circumstances of the case." Rabinowitz, 989 N.Y.S.2d at 305. A defendant need not remove ice and snow until the storm has ceased entirely, and a brief "lull in the storm" does not impose a duty to immediately clear ice and snow. Id. "Once there is a period of inactivity after cessation of the storm, it becomes a question of fact as to whether the delay in commencing the cleanup was reasonable. In some instances a period of as much as 30 hours could be viewed as insufficient to establish negligence." Powell v. MLG Hillside Assocs., L.P., 737 N.Y.S.2d 27, 29 (App. Div. 2002) (citing Valentine v. City of New York, 449 N.Y.S.2d 991 (App. Div. 1982), aff'd 443 N.E.2d 488 (N.Y. 1982)).

The Government offers the forensic weather report of certified consulting meteorologist Howard Altschule to show there was a storm in progress at the time of Plaintiff's fall. Dkt. Nos. 42-10 ("Altschule Report"), 42-11 ("Altschule Affidavit"). The Altschule Report reveals that approximately twenty inches of snow fell in the Tillson area on February 13 and 14, 2014, resulting in twenty-six inches of snow on the ground on the morning of February 15. Altschule Report at 6. Additionally, a melting and refreezing process occurred in the early morning hours

of February 15, which caused new ice to form overnight. Id. at 9. New snow fell throughout February 15, beginning at approximately 5:05 AM. Id.

New York courts have explained that evidence of a storm in progress "is especially persuasive when based upon the analysis of a licensed meteorologist," such as Altschule. Powell, 737 N.Y.S.2d at 28. Plaintiff has presented no evidence to challenge the Altschule Report. She argues that Warg's deposition testimony "undermines" the Government's claim that there was a storm in progress. Opp'n at 8. Not so. Warg stated that she "d[id]n't recall" the weather on the Plaintiff fell. Warg Tr. at 26:9. Her testimony that she "believe[d] it was cloudy" and not sunny, id. at 26:3–4, is not inconsistent with Altschule's conclusion that a storm was in progress on February 15. Nor does Plaintiff's testimony that there was snow on the ground at the Post Office when she fell, Brisbois Tr. 43:10–12, in any way refute Altschule's conclusions. The Court concludes that the Government has demonstrated that a storm was in progress at the time of Plaintiff's fall, and Plaintiff has failed to raise a triable issue of fact on this question.

Plaintiff claims that "there are questions of fact regarding whether an adequate amount of time passed from when the ice formed until [her] fall for [the Government] to discover and remedy the dangerous condition." Opp'n at 4. She cites no evidence to support her claim. In any event, Plaintiff is mistaken. As explained above, the Government's unchallenged evidence establishes that a storm was in progress at the time of Plaintiff's fall. Even if there was a brief pause in the storm at the time Plaintiff fell, which she has not demonstrated, "[a] lull in the storm does not impose a duty . . . to remove the accumulation of snow or ice before the storm ceases in its entirety." Mazzella v. City of New York, 899 N.Y.S.2d 291, 293 (App. Div. 2010) (citing DeStefano v. City of New York, 838 N.Y.S.2d 599 (App. Div. 2007)). Moreover, even if a storm

was not in progress on February 15, Plaintiff has not raised a triable issue of fact as to whether the Government unreasonably delayed in clearing ice from the Post Office sidewalk because she does not know what time she fell. Brisbois Tr. at 41:15–18. Without knowing when the accident occurred, it would be nearly impossible to assess whether the Government removed the ice in a reasonable time.

Because Plaintiff has failed to raise a triable issue of fact as to whether there was a storm in progress at the time of her accident, the Government is entitled to summary judgment. The Court need not reach the Government's additional arguments that it neither caused nor had notice of the ice patch on which Plaintiff slipped, Gov't Mem. at 11–16, or that it is immune from suit because Plaintiff's injuries were the result of an independent contractor's negligence, id. at 18–20.

### C. FDI's Motion

FDI argues that it is entitled to summary judgment because as an out-of-possession landlord, it owed no duty to keep the Post Office walk free of ice. FDI's Mem. at 2–3. Generally, "an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant." Boice v. PCK Dev. Co., LLC, 995 N.Y.S.2d 250, 252 (App. Div. 2014) (quoting Davison v. Wiggand, 668 N.Y.S.2d 748 (App. Div. 1998)), lv. denied 722 N.E.2d 505 (N.Y. 1999)); accord Patrick v. Grimaldi, 954 N.Y.S.2d 698, 699 (App. Div. 2012). There are exceptions to the general rule, including where a landlord "specifically contracted to repair or maintain the property or has affirmatively created the dangerous condition." Boice, 995 N.Y.S.2d at 252. Here, the Postal Service assumed responsibility for regular upkeep and maintenance of the Post Office property, FDI SMF ¶ 4, and

FDI maintained responsibility for "structural repairs," Lease ¶ 27. Plaintiff argues that her injuries were caused by "a broken gutter and downspout," which "are part of the [Post Office's] structure" because they "are attached to the building." Opp'n at 20. She cites no authority to support her contention that materials are structural if they are "attached" to a building, and her definition conflicts with the Lease, which limits "structural repairs" to those impacting specific components of the building, such as the foundation and bearing walls. Lease ¶ 27.

Even assuming that water flowing from a defective gutter caused Plaintiff's injuries, FDI is entitled to summary judgment because a broken gutter does not constitute a structural defect. "[O]nly a significant structural or design defect that is contrary to a specific statutory safety provision will support imposition of liability against the landlord." Brown v. BT-Newyo, LLC, 941 N.Y.S.2d 343, 344–45 (App. Div. 2012) (alteration in original) (quoting Velazquez v. Tyler Graphics, Ltd., 625 N.Y.S.2d 537 (App. Div. 1995)). While not directly on point, the Appellate Division's decision in Brown is instructive. There, the court held that a lack of gutters did not constitute a structural defect even though the tenant's employee had recommended "that gutters be installed on the building because he was concerned that icicles forming on the edge of the roof could pose a danger." Id. at 345. Because the Brown plaintiff could not identify a specific regulation requiring gutters, the court held that failure to install them did not amount to a structural defect, and so the out-of-possession building owner was not liable. Id. Without citing the record, Plaintiff contends that "there are questions of fact regarding whether a structural defect caused the icy condition on which [she] fell." Opp'n at 20. But she has identified no "specific statutory safety provision," Brown, 941 N.Y.S.2d at 344, requiring the installation or maintenance of gutters.

In light of <u>Brown</u>'s holding that the absence of gutters does not constitute a structural defect, <u>id.</u>, and the Lease's explicit terms, which exclude gutter maintenance from the list of enumerated structural repairs, Lease ¶ 27, the Court concludes that any problem with the Post Office's gutters is not a structural defect, and thus not FDI's responsibility. Plaintiff does not argue that any other exception to the out-of-possession landlord rule applies here, and the Court is aware of none. Therefore, FDI is entitled to summary judgment on Plaintiff's claims.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that FDI's Motion (Dkt. No. 42) is **GRANTED**; and it is further

**ORDERED**, that the Government's Motion (Dkt. No. 43) is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1, Ex. A) is **DISMISSED**, and the Clerk of the Court is instructed to close this case; and it is further

**ORDERED**, that the complaint in Member Case No. 1:15-CV-354 (LEK/ATB) is **DISMISSED**, and the Clerk of the Court is instructed to close the case; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   December 01, 2017
              Albany, New York

Lawrence E. Kahn
U.S. District Judge